UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADAM BROWN,

                Plaintiff,                Case No. 1:15-cv-1125

v.                                               Honorable Robert Holmes Bell

D. LaLONDE et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint as frivolous against Defendants Gurnoe, Lightfoot, Crandall, Treewiler, Vanderbaul, Milanowski and Schuette. The Court will serve Plaintiff's Eighth Amendment claim against Defendants D. LaLonde, (Unknown) LaLonde, Clark, Isard and Bennin.

**Factual Allegations**

Plaintiff is incarcerated in the Gus Harrison Correctional Facility, but the events giving rise to his complaint occurred while he was being held at the Chippewa Correctional Facility (URF) and the Bellamy Creek Correctional Facility (IBC). In his *pro se* complaint, Plaintiff sues the following URF employees: Deputy Warden (Unknown) Isard; Acting Resident Unit Manager (ARUM) D. LaLonde; Assistant Resident Unit Supervisor (Unknown) Clark; and Corrections Officers (Unknown) LaLonde, (Unknown) Gurnoe, (Unknown) Bennin, and (Unknown) Lightfoot. Plaintiff also sues the following IBC employees: Deputy Warden (Unknown) Treewiler and Corrections Officers (Unknown) Crandall, (Unknown) Vanderbaul and (Unknown) Milanowski. In addition, Plaintiff sues Michigan Attorney General Bill Schuette.

Plaintiff alleges that he was placed in Quarry Unit at URF on April 21, 2015, after he was assaulted by another prisoner. On May 6, 2015, Plaintiff allegedly overheard Defendants Clark and ARUM LaLonde discussing that Plaintiff would be attacked if he was returned to the general population at URF. ARUM LaLonde allegedly stated, "Good, maybe they will do it for us," which Plaintiff interpreted as a hope or desire that prisoners would seriously injure or kill Plaintiff. (Compl.¶ 17, ECF. No. 1, PageID.4.) The following day, Plaintiff spoke to ARUM LaLonde regarding his concerns for his personal safety if he was returned to the general population, but LaLonde "manipulated and intimidated" Plaintiff into returning to the general population. LaLonde assured Plaintiff that he would be safe in the general population and threatened that if Plaintiff refused to return to the general population, he would be moved to Steamboat Unit. According to Plaintiff, LaLonde was aware that Defendant Gunroe had threatened to destroy all of Plaintiff's personal property if he returned to Steamboat Unit.

On May 9, 2015, Plaintiff allegedly overheard a conversation between Defendants Corrections Officer LaLonde and Isard, during which they discussed "how nice it would be if they did it for us," which Plaintiff construed as yet another reference to Plaintiff being attacked by other prisoners. (Compl.¶ 21, PageID.5.)  Plaintiff alleges that Defendants LaLonde and Isard exercised control over whether Plaintiff would be sent to general population and failed to take action to prevent an imminent attack by other prisoners.  Plaintiff was returned to the general population the same day, and four hours after his arrival, he was viciously attacked by two prisoners.  As Plaintiff was being escorted to Quarry Unit after the attack, Defendant Bennin allegedly told Plaintiff that he had observed the assault from the beginning, but chose not to report it until someone else did.

As Plaintiff's complaint progresses toward his transfer to IBC, his allegations become increasingly fantastic.  Plaintiff asserts that sometime in May 2015, an Assistant Attorney General,[1] under the command of Defendant Schuette, paid Defendant Lightfoot $1,000 to place a camera in the vent of Plaintiff's cell.  Plaintiff further alleges that the same attorney also paid several other corrections officers $1000 "in order to get them to harass me and provoke mental stress with mind games." (Compl.¶ 25, PageID.6.)

Plaintiff was transferred to IBC on May 28, 2015.  He alleges that he was placed in a filthy cell and denied cleaning supplies.  On the day of his transfer, Plaintiff allegedly overheard a conversation between Defendant Crandall and the Assistant Attorney General during which Crandall agreed to accept $1000 as payment for waging a campaign of harassment against Plaintiff. Plaintiff claims that on May 29, Defendant Treewiler taunted Plaintiff with his cell phone as a way to provoke Plaintiff to file frivolous grievances and harassed Plaintiff with mind games at the behest

---

[1]The Assistant Attorney General is not named as a Defendant in this action.

of the Defendant Schuette's office. Plaintiff alleges that sometime in May or June 2015, he overheard the previously mentioned Assistant Attorney General and another man arguing, "at which time the attorney pulled out a knife while declaring that he was going to stab [Plaintiff] to kill him." (Compl.¶28, PageID.6-7.)

Plaintiff claims that he broke the sprinkler head in his cell on June 8, 2015, in a desperate attempt to meet with Defendant Schuette and his assistant for purposes of ending the campaign of harassment. The following day, Plaintiff suffered an anxiety attack. Plaintiff alleges that he screamed loudly, but Defendant Vanderbaul ignored his pleas for help because Defendant Schuette told him that Plaintiff was faking. Later that night, Plaintiff allegedly heard Defendant Schuette saying, "It would've been good if he'd died, then we could've just given the family $10,000." (Compl.¶ 31, PageID.7.) On June 14, Plaintiff drank a full bottle of cleaning chemicals in an attempt to get moved to the hospital where he could seek help with regard to the campaign of harassment described in his complaint. Five days later, Plaintiff slammed his left pinky finger in a foot locker for the same purpose. Plaintiff contends that the incident on June 19 was observed by members of Defendant Schuette's Office, who were observing Plaintiff through a camera that was placed in the light in his cell. Plaintiff continued to suffer from extreme stress as a result of the harassment and contemplated suicide.

On June 25, 2015, Plaintiff slammed his left pinky finger in the footlocker for the second time. Plaintiff claims that he committed this self-injurious act because he overheard the attorney saying that, if he went though with it, the campaign of harassment and threats would be over. Five days later, Plaintiff overheard one of the attorneys talking about having Plaintiff killed. Plaintiff tried to break his hand on July 2, in another desperate attempt to get help. Plaintiff further alleges that, "[He] was le[]d to believe numerous times that if he did things to harm himself that the

situation of threats and harassment would end, yet the situation always continued." (Compl.¶ 38, PageID.8.)

Plaintiff handed a kite to Defendant Milanowski on July 8, 2015, asking to be placed on suicide observation status. Plaintiff claims that Milanowski refused his request and instructed him to use the regular kite system. On July 11, 2015, Plaintiff cut his arm open. Plaintiff alleges that, "Although Plaintiff Brown was not certain whether the attorneys for the Attorney General's Office has microphones in his cell, these attorneys definitely could overhear by the speakers in the hallway that Plaintiff was going to cut himself and again slam his finger in the footlocker." (Compl.¶ 41, PageID.9.) Plaintiff contends that he suffered staff harassment and threats because of his race and religion, and in retaliation for his attempts to contact the Michigan State Police and Attorney Alyson Oliver to report Defendants' misconduct. Plaintiff alleges that he wrote numerous grievances regarding the events set forth in the complaint, but they were never processed. Plaintiff believes that staff discarded his grievances to suppress his complaints and conceal staff misconduct.

Plaintiff asserts violations of his First, Eighth and Fourteenth Amendment rights. He also brings a state law tort claim for intentional infliction of emotional distress. He seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

**Discussion**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    I.    **Defendants Clark, Bennin, Isard, ARUS LaLonde, and Officer LaLonde**

Plaintiff alleges that Defendants Clark, Bennin, Isard, ARUS LaLonde and Officer LaLonde failed to protect him from assault by other prisoners while he was incarcerated at URF. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on

prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). At this stage of the proceedings, Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendants Clark, ARUS LaLonde, Officer LaLonde Isard and Bennin.

II. **Defendant Gurnoe**

Plaintiff's only allegation against URF Officer Gurnoe is that he threatened to destroy Plaintiff's personal property if he returned to Steamboat Unit. Gurnoe alleged threat, standing alone, constitutes nothing more than verbal harassment, which does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct

every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."). Plaintiff, therefore, fails to state a claim against Defendant Gurnoe.

      III.     **Defendants Lightfoot, Crandall, Treewiler, Vanderbaul, Milanowski and Schuette**

A claim may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brown v. Bargery*, 207 F.3d 863, 866 (2000); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. The Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.*, 490 U.S. at 327. "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Examples of claims lacking rational facts include a prisoner's assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts. *See Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1198-99. An *in forma pauperis* complaint may not be dismissed, however, merely because the court believes that the plaintiff's allegations are unlikely. *Id.*

The latter portion of Plaintiff's complaint, in which he makes allegations against Defendants Lightfoot, Schuette, Crandall, Treewiler, Vanderbaul and Milanowski, clearly lacks an arguable or rational basis in fact. For example, Plaintiff alleges that before his transfer to IBC, an unnamed Assistant Attorney General, under the command of Defendant Schuette, paid Defendant Lightfoot $1000 to place a camera in the vent of Plaintiff's cell. Plaintiff further alleges that the same attorney also paid several other corrections officers, including Defendant Crandall, $1000 to wage a campaign of harassment against Plaintiff. Following his transfer to IBC, Plaintiff alleges that the unnamed Assistant Attorney General pulled out a knife and threatened to stab Plaintiff. He also claimed that attorneys from Defendant Schuette's office were observing Plaintiff through a camera that was placed in the light in his cell and also could hear him by way of a microphone planted in Plaintiff's cell or speakers in the hallway. During this period, Plaintiff admits to multiple acts of self-injurious behavior because he believed that harming himself would stop the alleged campaign of harassment initiated by Defendant Schuette's office.

Although a single allegation of Plaintiff's complaint may not "strain credulity" sufficiently to be considered frivolous, *see Lawler*, 898 F.2d at 1198, the allegations set forth in the latter portion of Plaintiff's complaint clearly describe fantastic or delusional scenarios. Accordingly, the Court will dismiss Plaintiff's action because it is frivolous. *See Burnes v. Clinton*, No. 00-3208, 2000 WL 1800510, at *1 (6th Cir. Nov. 30, 2000) (complaint alleging that President Clinton and various other high-ranking federal officials were subjecting her to electronic surveillance, mind-reading, and remote torture due to her bisexuality was properly dismissed as frivolous); *Graves v. Cohen*, No. 99-4476, 2000 WL 1720647, at *1 (6th Cir. Nov. 7, 2000) (plaintiff's claim concerning the AIDS virus being injected into the American population by the Pentagon was

properly dismissed as frivolous); *Dowell v. Tennessee*, No. 92-6125, 1993 WL 169052, at *1 (6th Cir. May 18, 1993) (affirming district court's dismissal of claims of conspiracy to inflict emotional distress as fantastic and delusional).[2]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Gurnoe, Lightfoot, Crandall, Treewiler, Vanderbaul, Milanowski and Schuette will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's Eighth Amendment claims against Defendants D. LaLonde, (Unknown) LaLonde, Clark, Isard and Bennin.

An Order consistent with this Opinion will be entered.


Dated: March 11, 2016                        /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff's claims of racial and religious discrimination and retaliation also would be subject to dismissal for failure to state a claim because they are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at 555.